NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0224n.06
Filed: March 28, 2007

Case Nos. 05-5187; 05-5472; 05-5473

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| ERNEST D. MILLER, | ) | DISTRICT OF TENNESSEE |
| MARY L. MILLER, | ) | |
| RICHARD L. RAMSEY, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: BATCHELDER, McKEAGUE, Circuit Judges; and ACKERMAN, District Judge.[*]

**ALICE M. BATCHELDER, Circuit Judge.** Ernest Miller and Mary Miller, husband and wife, were convicted by a jury on charges of conspiracy to manufacture and to possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846; aiding and abetting the attempt to manufacture methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2; aiding and abetting the possession of materials to manufacture methamphetamine in violation of 21 U.S.C. §§ 843(a)(6) and 843(d)(2), and 18 U.S.C. § 2; possession of firearms in furtherance of drug trafficking crimes in violation of 18 U.S.C. § 924(c); and possession of firearms having been previously convicted of a felony in violation of 18 U.S.C.

---

[*]The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

§ 922(g)(1). Richard Ramsey was tried with the Millers and convicted of the conspiracy and drug trafficking charges. All three defendants appeal their convictions and sentences. We conclude that the district court did not commit reversible error in either the pretrial proceedings or the trial; that sufficient evidence supports the conviction of each of the defendants; and that the sentence of each defendant is reasonable, and we affirm.

## I. Factual and Procedural Background

On November 27, 2002, Deputy Scott Wilson of the Monroe County, Tennessee, Sheriff's Department, obtained a search warrant from a state court judge for the residence of Ernest and Mary Miller, who lived on property owned by Ernest and his mother. The warrant was supported by Wilson's affidavit stating that Wilson had obtained and executed a search warrant for these premises more than one year earlier, had found there, among other things, methamphetamine, drug paraphernalia, firearms and ammunition, and that as a result of that search, Ernest and Mary Miller had pleaded guilty during the previous week to criminal charges. The affidavit stated that in September 2002, Wilson had learned from a confidential informant ("CI") that the CI had been inside the Miller residence where he or she had seen methamphetamine, firearms, and ammunition, and heard Ernest Miller talking about manufacturing methamphetamine. Further, the affidavit said that within 72 hours of November 27, 2002, the same CI had seen in the Millers' residence methamphetamine, chemicals, and paraphernalia used in the manufacture of methamphetamine, including open containers of two-layer liquids, methamphetamine packaged for resale, numerous firearms, and ammunition, and had heard Ernest Miller say that he had explosives on the property. Finally, the affidavit declared that the CI was a credible source who had provided reliable

2

information in the past that had led to the successful discovery of methamphetamine and the prosecution of at least two individuals on methamphetamine charges.

The search warrant instructed officers to search

> the (premises)(house or buildings on the premises)(vehicle) located in Monroe County, Tennessee and described as follows: 1950 Corntassel Road, Madisonville, Tn. From the intersection of Povo Road and Corntassel, turn right onto Corntassel Road, (#426), go approximately ½ mile to a very rough, rutted driveway on the left hand side which leads up a hill to a trailer with an addition built on the front and a workshop to the right. Photo attached.

The warrant was attached to the affidavit, and instructed officers to search for "methamphetamine and all items in paragraph 7 of affidavit." Paragraph 7 of the affidavit contains an exhaustive compilation of the kinds of things that the affiant, in his experience as a narcotics investigator, has found that drug dealers tend to keep in various locations on their property, including documentation or records of drug activity, firearms, currency, motor vehicles used to transport controlled substances, and packaging materials for drugs.

Sheriff's deputies executed the search warrant during the early evening of November 27, 2002. Inside the trailer, the officers found Ernest Miller and Mary Miller, Mary's daughter Samantha Moreno, and Phyllis Ellison. When the officers searched Ernest Miller, they found a coffee filter containing seven twist-tie baggies of methamphetamine in one front pocket, 34 rounds of .22 caliber ammunition in the other, and a wallet containing $950 in a rear pocket. Their search of the trailer yielded, among other things, two twist-tie baggies of methamphetamine, a bottle of gas line antifreeze, glass jars of two-layer and single-layer liquids, a plastic jug with tubing, two containers of red devil lye, stained coffee filters, a red-stained heat gun, numerous long guns – a loaded Mossberg .12 gauge shotgun and several others, both loaded and unloaded – a loaded .22 caliber

3

revolver, a loaded .357 magnum revolver, hundreds of rounds of various kinds of ammunition, digital scales, a propane torch, a container with an attached motorized aquarium filter, many empty matchbooks, assorted jars containing liquids, and glass jars that had been washed and were drying. The officers also found – inside Mary Miller's purse – a shopping list for the Dollar General Store including coffee filters, peroxide, and Sudafed, and, elsewhere in the trailer, a receipt from the Dollar General Store dated November 1, 2002, for purchases of three bottles of hydrogen peroxide, isopropyl alcohol, two boxes of nasal decongestant, eye shadow, birthday candles, coffee, eye liner, and a greeting card. On the receipt, beside the entries for the hydrogen peroxide, alcohol and nasal decongestant, were the initials "EM"; beside several other entries were the initials "SM"; and attached to the receipt was a note that said "Mom, I owe you $9.50 from 11-1-02. Give it back soon. Love you, Samantha."

While other officers were searching the trailer, Deputy Jeff Vittatoe, who was assigned to secure the rear of the trailer, saw Richard Ramsey – whom Vittatoe recognized immediately – come out of a shed located behind the trailer. When Vittatoe identified himself as a police officer and pointed his weapon at Ramsey, Ramsey bolted for the nearby woods, and, although Vittatoe pursued him, Ramsey escaped. Vittatoe returned to the shed and looked inside, where he discovered part of an operating methamphetamine lab. The fumes coming from the shed were strong enough that officers donned respirators before attempting to enter the shed, and once inside, they found a Coleman stove with an operating burner heating a glass flask containing chemicals. Taped to the flask was a high heat hose that ran up to the ceiling and down to a large bottle filled with water and ice.

4

Ernest Miller, Mary Miller, Samantha Moreno, Richard Ramsey, and an individual named Steven Bivens – who had arrived at the Miller residence after the search but while the officers were still there – were indicted on charges of conspiracy to manufacture, possess with intent to distribute and to distribute methamphetamine, aiding and abetting the attempt to manufacture methamphetamine, and aiding and abetting the possession of equipment and materials used to manufacture methamphetamine, knowing and intending that they be used for such manufacturing. Each of the Millers and Bivens were charged with possession of firearms in furtherance of a drug trafficking crime and with being a felon in possession of a firearm. Samantha Moreno was charged with multiple counts of possession of equipment and materials used to manufacture methamphetamine, knowing and intending that they be used for such manufacturing. After a series of pre-trial motions, the matter proceeded to jury trial, and the Millers, Moreno, and Ramsey were convicted on all of the counts in which they were named. Bivens was convicted only on the felon-in-possession charge. Each of the Millers and Ramsey were sentenced shortly after the opinion was handed down in *United States v. Booker*, 543 U.S. 220 (2005); each of them timely appealed.

## II. Legal Analysis

### A. The Scope of the Search Warrant – Ernest Miller

Ernest Miller argues that the search warrant for the November 27, 2002, search of the trailer did not identify the items to be seized with sufficient specificity and that the officers' search of the shed behind the trailer exceeded the warrant's scope. Prior to trial, Miller filed a motion to suppress the evidence found in the shed, contesting, among other things, the warrant's validity for failure to identify the shed as a building to be searched. The Magistrate Judge recommended that Miller's motion be denied because Miller lacked standing to object to the search of the shed and, in any event,

5

the search did not exceed the scope of the warrant.  Miller filed no written objections to this aspect of the Magistrate's Report and Recommendation, and the district court, after reviewing the objections that Miller did file, adopted the Report in its entirety.  Because Miller failed to object to these findings in the Magistrate Judge's Report and Recommendation, he has waived the right to raise them before this court on appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Although we may excuse Miller's waiver in the interests of justice, *see id.* at 155, we do not find any reason to excuse the waiver here.  In the proceedings before the Magistrate Judge, Miller objected to the search of the outbuilding because it "belong[ed] to someone other than the defendants or their family."  Miller's own objection establishes his lack of standing to object to the search, and the affidavit and warrant are facially sufficient to support the breadth of the search.

## B. The Confidential Informant – Ernest Miller

In his motion to suppress, Ernest Miller argued that the November 27, 2002, search warrant was invalid because the supporting affidavit failed to establish that the CI was reliable and that his information was current.  Miller moved for disclosure of the identity of the CI, but the Magistrate Judge denied the request.  Over Miller's written objection, the district court affirmed the denial, holding that "[i]nformation provided by the confidential source was reliable and was independently corroborated by law enforcement agents, as the affidavit sets out in detail."

On appeal, Miller argues that the identities of at least three different informants – the CI from whom the information in the affidavit supporting the November 27, 2002, search warrant was obtained and two informants from whom information leading to his earlier drug conviction was obtained – are essential to the fairness of the proceedings against him.  This argument bears no relationship to what Miller raised before the Magistrate Judge or the district court, and, in any event,

we find no merit to the claim. Because Miller did not raise any claim regarding any informants other than the CI referred to in the November 27 affidavit, we review for plain error Miller's claim regarding those other informants. *See United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998). We review for abuse of discretion his claim that the district court erred in denying his motion for disclosure of the CI. *United States v. Jenkins*, 4 F.3d 1338, 1341 (6th Cir. 1993).

Miller relies on language in *Roviaro v. United States*, 353 U.S. 53 (1957), in which, after noting that "the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law," *id.* at 59, the Supreme Court said: "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61. Miller complains that, as was the case in *Roviaro*, disclosure of the identity of these informants is required because the information in the affidavits – *i.e.*, the affidavits supporting the November 27, 2002, search warrant and the search warrant executed the previous year – demonstrates that these informants were involved in the offenses. We have examined the affidavits, and find no indication that the informants were in any way involved in the offenses for which Miller was convicted. We have held that "[a]n informant must be disclosed only upon a showing by the defendant that disclosure is essential to a fair trial." *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992). Miller has made no such showing, and we find neither an abuse of discretion nor plain error in the proceedings in the trial court.

## C. Jury Voir Dire – Ernest Miller and Richard Ramsey

Early in the jury selection process, the attorney for co-defendant Steven Bivens said to the potential jurors:

> "Can I put on a witness I know is lying to defend my client? . . . I'm defending my client, I'm obligated to, but can I put on a witness I know is lying? . . . I'd be disbarred. . . . All the lawyers in this courtroom are not allowed to put on [proof] that they think is not true. All right?"

No party objected at that time, but prior to empaneling the jury, Ernest Miller's counsel moved to strike the entire panel or, alternatively, to sever Miller's case, on the grounds that Bivens's counsel's statement was a comment on a defendant's right not to testify, and it had prejudiced the jury against Ernest Miller in the event he did not take the witness stand. None of the other defendants joined in Miller's motion. The court denied the motion, finding that the statement would not reasonably be construed by the jurors as any kind of comment on whether any defendant should or should not testify. Ernest Miller and Richard Ramsey now argue that the comment by Bivens's counsel was a violation of Miller's Fifth Amendment right to silence.

We review for abuse of discretion the denial of a motion to strike a jury panel or for a mistrial during jury voir dire. *See United States v. Shropshire*, 498 F.2d 137, 139 (6th Cir. 1974) and *United States v. Knipp*, 963 F.2d 839, 845 (6th Cir. 1992). Miller complains that the jury heard Bivens's counsel's remark, "and when Mr. Miller did not testify, this is what they remembered." But the record reflects that Bivens's counsel was the first to voir dire the jury, and before any further voir dire was conducted, Miller's counsel moved to strike the panel. That motion was denied, and if Miller's counsel – or any of the defense counsel – had wanted to correct any misconception, he could surely have done so through his own questioning of the potential jurors. Neither he nor any other counsel made any effort to do so. We find no abuse of discretion here.

8

**D. Sufficiency of the Evidence – Ernest Miller and Richard Ramsey**

Ernest Miller and Richard Ramsey claim that the evidence is insufficient to support their convictions for conspiracy. They do not challenge the sufficiency of the evidence to support their convictions on the other charges.

Evidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To prove a conspiracy under 21 U.S.C. § 846 to violate 21 U.S.C. § 841(a)(1), the Government must prove (1) an agreement to violate 21 U.S.C § 841(a)(1); (2) knowledge and intent of the defendants to join the conspiracy; and (3) defendants' participation in the conspiracy. *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005). Importantly, the Government is not required to provide proof of any formal agreement among the parties, but may instead provide proof of "a tacit or material understanding" among them. *United States v. Avery*, 128 F.3d. 966, 970-71 (6th Cir. 1997). Furthermore, it is not necessary that the government prove that "a defendant participated in all aspects of the conspiracy; it need only prove that the defendant was a party to the general conspiratorial agreement," *id.* at 971, and although the government must prove the agreement itself beyond a reasonable doubt, "the connection between [a] defendant and the conspiracy need only be slight." *Id.* Finally, "[t]he existence of a conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *Martinez*, 430 F.3d at 330 (internal citations and quotations omitted.)

We conclude that the record contains sufficient evidence to support the convictions of both of these defendants on the conspiracy charge. When the search warrant was executed on November

9

27, 2002, both of the Millers and Samantha Moreno were inside the trailer that was the Millers' residence, and Ramsey was in the shed – immediately behind the trailer – where manufacturing of methamphetamine was in progress. Methamphetamine and materials and equipment used to manufacture methamphetamine were found throughout the trailer, along with loaded firearms that a reasonable juror could infer were present to protect the methamphetamine production. Ernest Miller had on his person $950 and seven baggies of methamphetamine. And, despite Ernest Miller's protestations that the shed was not owned by him or his family, there was testimony in the record that the property described in the warrant was owned by Ernest Miller and his mother. Finally, Phyllis Ellison, who was in the trailer when the warrant was executed, testified at trial that she and Ramsey had lived together for 21 years, although they had never married, and that she and Ramsey had both obtained methamphetamine from Ernest Miller.

Miller argues that the evidence only demonstrates "presence, possession, and personal use of methamphetamine," but not that Miller participated in a conspiracy. Similarly, Ramsey argues that he was merely present at the scene, and that no evidence tied him to the conspiracy. Neither defendant is correct. When the officers arrived at the Miller residence, Ramsey was inside the shed where the methamphetamine was being produced. Upon seeing Deputy Vittatoe, Ramsey immediately fled – conduct that a reasonable juror could certainly have viewed as evidence of guilt. The equipment and materials typically used to manufacture methamphetamine and the quantity of weapons and ammunition found in Ernest Miller's trailer, the testimony of Phyllis Ellison that she had obtained methamphetamine from the Millers, and the evidence that Miller was found with $950, seven baggies of methamphetamine, and over 30 rounds of ammunition in his pockets, supports a reasonable inference that Miller was involved in the manufacture and distribution of the drug. The

10

evidence that the methamphetamine was being manufactured in quantities beyond those used for personal consumption, and that the drugs were individually wrapped in small plastic baggies further supports such an inference.

From the evidence in this record, a rational juror could find that there was an agreement to violate the drug laws by manufacturing, possessing and distributing methamphetamine; that Miller and Ramsey intended to join in the conspiracy by operating a methamphetamine lab in the shed; that Ramsey participated in the conspiracy by manufacturing methamphetamine in the shed; and that Ernest Miller participated in the conspiracy by providing materials and equipment necessary to manufacture methamphetamine, and the digital scales to measure drug quantities for distribution, and by keeping loaded firearms throughout the property to protect the operation. Taken together, the evidence presented at trial was sufficient to permit a rational juror to conclude beyond a reasonable doubt that Ramsey and Miller conspired to manufacture, possess with intent to distribute, and to distribute methamphetamine.

### E. Sufficiency of the Evidence – Mary Miller

Mary Miller challenges on the ground of insufficiency of the evidence her convictions on the conspiracy count and the 18 U.S.C. § 924(c) and 18 U.S.C. § 922(g)(1) counts. Specifically, she contends that the Government did not establish beyond a reasonable doubt that (1) she entered into an agreement with her husband and others to manufacture methamphetamine or to possess materials to manufacture methamphetamine; and (2) that she either actually or constructively possessed firearms as a convicted felon or in furtherance of the drug offenses.

### 1. Conspiracy to Manufacture Methamphetamine

11

As with Ernest Miller and Richard Ramsey, the Government must prove an agreement to violate 18 U.S.C. § 841(a)(1), that the defendant knew of and intended to join the conspiracy; and that she participated in the conspiracy. Like Ernest Miller and Ramsey, Mary Miller contends that the evidence at trial proved nothing beyond her "mere presence" in the trailer, and this is insufficient to convict her of conspiracy. Like Ernest Miller and Ramsey, Mary Miller is incorrect.

The November 1, 2002, sales receipt for purchases of three bottles of hydrogen peroxide, isopropyl alcohol, two boxes of nasal decongestant, coffee filters and other items, with the initials EM beside the hydrogen peroxide and nasal decongestants, attached to a note that read, "Mom, I owe you $9.50 from 11-1-02. Give it back soon. Love you, Samantha," allows for the reasonable inference that Mary Miller – i.e. "Mom" – purchased items which are commonly used to manufacture methamphetamine. The officers executing the search warrant found inside Mary Miller's purse a shopping list including items commonly used to manufacture the drug. Phyllis Ellison testified that she had obtained methamphetamine from Mary Miller. That evidence, together with the equipment and materials commonly used to manufacture methamphetamine and the many loaded weapons found throughout the trailer in which Mary and Ernest Miller lived, would permit a rational juror to find beyond a reasonable doubt that there was a tacit agreement among Ernest Miller, Mary Miller, and Richard Ramsey to violate the drug laws by manufacturing and distributing methamphetamine on the Millers' property, and that Mary Miller actively participated in the conspiracy by procuring some of the necessary ingredients for the methamphetamine production.

## 2. Possession of a Firearm in Furtherance of a Drug Trafficking Offense

Mary Miller argues that the guns' mere presence in the residence she shared with her husband is insufficient to prove beyond a reasonable doubt that she possessed them for purposes of either 18 U.S.C. § 924(c) or § 922(g)(1).

We have held that a firearm is deemed to be possessed "in furtherance of" a drug trafficking offense, if it promotes or facilitates the crime. *United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001). This means, we have said, that there must be a "specific nexus between the gun and the crime charged." *Id.* at 462.

> In order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use. . . . Other factors that may be relevant to a determination of whether the weapon was possessed in furtherance of the crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found. . . . The list of factors is not exclusive, but it helps to distinguish possession in furtherance of a crime from innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard.

*Id*. (internal citations omitted). Possession of the weapon may be actual or constructive, and it may be either exclusive or joint. *United States v. Paige*, 470 F.3d 603, 610 (6th Cir. 2006). "Proof that the person has dominion over the premises where the firearm is located is sufficient to establish constructive possession." *United States v. Coffee*, 434 F.3d 887, 896 (6th Cir. 2006) (citation omitted).

The record demonstrates that Mary Miller participated in the conspiracy to manufacture methamphetamine; that numerous loaded firearms were strategically placed throughout her residence, easily available for use and in close proximity to methamphetamine and its components; and that she constructively possessed the firearms because they were found in places that were under her – at least joint – control, namely, the kitchen, the den, and the master bedroom and bath.

13

Furthermore, the ongoing methamphetamine operation and the strategic placement of the guns throughout the trailer is sufficient to permit a rational juror to conclude that the guns served a defensive purpose in protecting the lab and its contraband from thieves, competitors, or police. Ms. Miller provides an alternative explanation for the firearms' presence, contending that her husband is a gunsmith. But the evidence at trial demonstrated that there were loaded guns around the trailer – in the kitchen, the den, the bathroom, the bedroom night stand – suggesting that these guns were not merely part of Miller's gunsmithing enterprise. The guns were not located in a workshop area, or locked in a safe, or even disassembled in the course of being repaired. The jury was free to – and clearly did – conclude beyond a reasonable doubt that Mary Miller was a co-conspirator in a drug manufacturing operation in constructive possession of firearms in furtherance of her trafficking crime.

Mary Miller mentions that the evidence is insufficient to support her conviction on the charge of being a felon in possession of a firearm, but she provides neither argument nor case law to support that claim. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation omitted). And, in any event, the record demonstrates that Miller is a convicted felon for purposes of 18 U.S.C. § 922(g)(1) and that, as described above, she constructively possessed firearms. Constructive possession is sufficient for conviction under that statute. *Coffee*, 434 F.3d at 895.

### F. Ernest Miller's and Mary Miller's Prior Guilty Pleas

14

Ernest and Mary Miller argue that the district court erred in admitting evidence of their prior drug convictions under Federal Rule of Evidence 404(b). Ernest Miller argues that the admission violated his due process and Fifth Amendment rights, and Mary Miller contends that the probative value of her guilty plea was substantially outweighed by the danger of unfair prejudice under Rule 403.

We review a district court's ruling on Rule 404(b) evidence for an abuse of discretion. *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002). However, if the appellant did not object to the introduction of evidence at trial, the decision is reviewed for plain error. *United States v. Cowart*, 90 F.3d 154, 157 (6th Cir. 1996). Prior to trial, the Government moved *in limine* to introduce evidence of the prior convictions. The Magistrate Judge determined that each of these defendants had in fact been convicted of the crime of possession of methamphetamine; that the convictions for possession of methamphetamine were admissible to prove specific intent in the instant prosecution, but that the timing of the guilty pleas and sentencings on the prior offenses was not admissible; that the firearms found in the search leading to the prior convictions were admissible in the instant prosecution if the defendants placed in issue their intent or knowledge with respect to the use of the firearms found in the November 27, 2002, search and charged in the instant indictment; and that the probative value of this evidence was not substantially outweighed by its prejudicial impact. Over the objections of the Millers, the district court adopted the Magistrate Judge's findings. Neither Ernest nor Mary Miller renewed their pretrial objections to the Rule 404(b) evidence at trial.

Rule 404(b) provides that although evidence of other crimes, wrongs or acts is not admissible to prove a person's character or propensity to engage in criminal conduct, the evidence may be

admissible to prove intent, among other legitimate purposes. FED. R. EVID. 404(b). We have considered this a "rule of inclusion, not exclusion, . . . and the trial judge has broad discretion in admitting evidence under this Rule." *United States v. Myers*, 102 F.3d 227, 234 (6th Cir. 1996) (internal citations omitted).

Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." FED. R. EVID. 403. The "district court is granted 'very broad' discretion in determining whether the danger of unfair prejudice outweighs the probative value of the evidence." *United States v. Mack*, 258 F.3d 548, 555 (6th Cir. 2001) (citation omitted).

**1. Evidence of Ernest Miller's Prior Drug Conviction**

Ernest Miller argues that the November 27, 2002, search of his home was the culmination of an ongoing investigation into Miller's activities dating back to the March 2001 search. According to Miller, Deputy Wilson knew of Miller's guilty plea to an earlier set of felony charges related to methamphetamine, and "wait[ed] for Mr. Miller to submit to a felony conviction for the same type of conduct still under investigation, [and] then [brought] additional charges and upp[ed] the ante by including conspiracy and firearms charges in a subsequent federal prosecution . . . ." Miller contends that Deputy Wilson intended to "us[e] the felony conviction to create more plea bargain leverage and to bootstrap the prosecution into an enhanced posture for trial." Miller claims that Deputy Wilson, who was both a county sheriff's deputy and a deputized narcotics agent with the FBI, colluded with the federal prosecutors to enhance their case against Miller.

Arguing from dicta in the Seventh Circuit's opinion in *United States v. Long*, 852 F.2d 975 (7th Cir. 1988), Miller attempts to persuade us that the federal prosecution here violated his right to

due process and his rights under the Fifth Amendment. But *Long* was a case in which the defendant, after receiving assurances from the state that he would receive particular sentencing consideration, divulged to state authorities his role in some burglaries, including his having carried a gun during one of the burglaries. When he was subsequently prosecuted in federal court for weapons violations, Long sought to suppress his statement to the state authorities on the ground that it was not voluntary. The Seventh Circuit held that Long's statement was voluntary in the context of the state proceedings, and it did not become involuntary simply because Long was not aware when he made the statement that federal charges might ensue. Further, the court held that even if Long's cooperation were analogized to a plea agreement, "[a]bsent improper state or federal action or other evidence that Long's disclosure pursuant to a state agreement was not voluntarily and intelligently made, the disclosure is properly admissible in federal court." *Id.* at 980. Miller seizes on the negative implications of that statement, and the court's earlier observation that "[h]ad the state officers actively hidden such knowledge or colluded with federal officials, there would be different circumstances to consider," to argue that his plea of guilty in state court to the earlier methamphetamine charges was inadmissible in the instant proceedings.

Miller has not provided any evidence that state officers colluded with federal officials here, or that state officers hid any knowledge or otherwise acted improperly. Indeed, the Magistrate Judge found that although Deputy Wilson served with an FBI narcotics task force "from time to time," there was no evidence that he was serving in his federal capacity when he obtained and executed the November 2002 search warrant, and further determined that "there is no evidence of federal participation in the obtaining or execution of the warrant." Miller has given us no reason to conclude that those findings are erroneous. Nor has Miller provided any evidence that his state-court plea was

not intelligently and voluntarily entered. Rather, he appears to argue that because federal authorities were aware that he continued to engage in illegal drug trafficking activity throughout the period from his arrest on the state law charges until he entered his guilty plea to those charges, the federal authorities engaged in improper conduct by waiting to arrest him for that continuing activity until he had entered his plea in state court. Nothing in *Long* – either in its holding or its dicta – supports this argument. Neither due process nor the Fifth Amendment protects Miller from the consequences of his continuing to engage in criminal conduct after being apprehended and prosecuted in state court.

Even assuming *arguendo* that there is an argument to be made here, the Magistrate Judge found that the March 2001 investigation and the November 2002 investigation did not constitute an ongoing investigation, and Miller has presented nothing to convince us otherwise. Indeed, Miller's November 20, 2002, state court guilty plea related to possession of methamphetamine for resale, while the November 27, 2002, search revealed methamphetamine production, drug trafficking, and firearms possession. The Government may use prior act evidence under Rule 404(b) to show intent to commit new, but similar unlawful conduct. Here, the Magistrate Judge correctly ruled that the Government could use Miller's guilty plea in the methamphetamine-possession case to demonstrate his intent to produce methamphetamine in his backyard, and there is no basis for excluding the evidence on due process or Fifth Amendment grounds.

### 2. Evidence of Mary Miller's Prior Drug Conviction

Mary Miller also argues that the district court should have excluded evidence of her prior conviction for possessing methamphetamine with intent to distribute under Rule 404(b). In her pretrial motion, Ms. Miller argued that in addition to the 21 months separating the offenses, the

charges are different and different items were found in the two searches of her home, and therefore, the prejudice from the jury's learning that she had been arrested nearly two years earlier in the same place on drug-related charges would substantially outweigh the minimal probative value of that information.

The Magistrate Judge disagreed and after finding that its probative value was not substantially outweighed by a danger of unfair prejudice, found that Ms. Miller's prior conviction for possession of methamphetamine for resale was admissible. As the Magistrate noted, we have held that "[t]o be admissible, evidence of defendant's prior bad acts must be substantially similar and reasonably near in time to the charged offense." *United States v. Wynn*, 987 F.2d 354, 357 (6th Cir. 1993). Here, despite the two searches' yielding different quantities of methamphetamine and different degrees of production, they both involved methamphetamine possession and trafficking. Moreover, as the Magistrate also noted, although there were 21 months between the two searches, we have found that a two-year span did not diminish the probative value of the prior crime in a drug case. *United States v. Hofstatter*, 8 F.3d 316, 323 (6th Cir. 1993). Although there are differences between the two sets of offenses, we find no error in the district court's conclusion that the March 2001 possession-for-resale conviction is "highly probative" in the November 2002 case.

### G. The District Court's Refusal to Admit Transcript from Mary Miller's State Court Plea Hearing and Expert Testimony Relative to that Plea

Mary Miller argues that the district court abused its discretion in refusing to permit her to introduce the guilty plea transcript from her prior conviction, or to allow a local attorney, Charles Burk, to testify as an expert witness. "[A] court of appeals appl[ies] an abuse-of-discretion standard when it 'review[s] a trial court's decision to admit or exclude expert testimony.'" *Kumho Tire Co.,*

*Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (*quoting Gen. Elec. v. Joiner*, 522 U.S. 136, 138-39 (1997).

At trial, Ms. Miller argued that her plea of guilty to the state court charges had been introduced under Rule 404(b) to show intent or knowledge, and to rebut and reduce the prejudicial impact of that evidence, she should be permitted to introduce the transcripts from the state court plea proceedings and to call Mr. Burk to testify about "some other things to consider about why a person might enter a plea." She maintained that she did not seek to make a collateral attack on that state drug conviction, but wanted only to provide the jury with helpful information as to the guilty plea process in order for the jury to better weigh the prior bad act evidence as it related to the issue of knowledge and intent.

The district court rejected this reasoning. Addressing first the attempt to introduce the plea hearing transcript, the district court held that the transcript would not be admitted because it was hearsay being introduced for the truth of its content, and it was being offered in an attempt to present Ms. Miller's testimony without subjecting her to cross-examination. Remarking that the argument Ms. Miller's counsel was making was "inventive," the court opined that "the Sixth Circuit, I am sure, will have a good time looking at this as I did." Turning to the motion to introduce expert testimony, the court first noted that the point of that testimony would be to attack the state court guilty plea. The court acknowledged that an argument could be made that such testimony might be relevant to the intent required for conviction on the drug trafficking charges, but concluded that it could have no relevance to the firearms charges that were also before the jury. The court therefore excluded the testimony.

20

On appeal, Miller persists in her protestation that she did not offer this evidence as a collateral attack on her prior conviction. Rather, she contends, this evidence would have been helpful to the jury in determining how much weight to give to that prior conviction in determining her intent to commit the drug trafficking offenses for which she was being tried, and the court should have allowed it to avoid any further prejudice from the 404(b) evidence.

Even if the transcript is not hearsay – and we think that the district judge correctly concluded that it is – the point of its introduction was certainly to persuade the jury that the guilty plea in state court was entered for a reason other than Ms. Miller's actual guilt. The same is true of the testimony of Mr. Burk. Whether we have had as good a time reviewing this issue as the district court did we decline to say, but we have no difficulty in concluding that – Ms. Miller's protestations to the contrary notwithstanding – the introduction of this evidence would constitute a collateral attack on the conviction. The district court did not abuse its discretion in excluding it.

## H. Ernest Miller's Alleged Out-of-Court Statement

Mary Miller argues that the district court abused its discretion by denying her request to introduce an out-of-court admission allegedly made by Ernest Miller that the firearms belonged to him. Ms. Miller contends that the statement was admissible under Federal Rule of Evidence 804(b)(3), and because it is inculpatory of Ernest Miller, it is exculpatory of her, and its exclusion violated her right under the Due Process Clause of the Fifth Amendment to present a defense on her behalf. Ms. Miller contends that she is therefore entitled to a new trial. The district court held that the statement was not an admission against interest by a party-opponent because it was a co-defendant, and not the Government, who sought to introduce it. We do not agree that the district

21

court erred in excluding the admission, but even if it did, any error that resulted from the exclusion is harmless.

Mary Miller was not charged with illegal *ownership* of the firearms in her trailer. She was charged with illegal *possession* of the firearms, both as a felon and because her possession was in furtherance of a drug trafficking offense. The Government did not need to prove that Mary Miller owned the guns in question, but merely that she illegally possessed them. Mr. Miller's alleged admission of ownership, was not exculpatory as to Mary Miller, because ownership is not necessary to possession, nor are possession and lack of ownership mutually exclusive. The district court did not err in denying the statement's admission into evidence.

## I. Ernest Miller's *Apprendi* Claim

For his fifth assignment of error, Ernest Miller asks: "When the prosecution fails to prove specificity as to drug amounts and firearm possession, does *Apprendi* require a new jury trial?" Nowhere in this section of his brief does Miller mention his sentence. The Government responds to this argument as if it were only a claim that Miller's sentence was wrongly calculated. Whatever the nature of this claim, it is without merit. *Apprendi v. New Jersey*, 530 U.S. 466 (2000), held, as indeed, Ernest Miller's brief correctly quotes:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

*Id.* at 490. Miller points to no authority, and we are aware of none, that even implies that *Apprendi* entitles a defendant to a new trial when the jury has not made specific findings with regard to facts that would affect the sentence. Rather, that case requires, as we have repeatedly held, that "where drug quantity is not proved beyond a reasonable doubt, a defendant's sentence cannot *exceed* the

statutory range set forth in § 841(b)(1)(C)." *United States v. Copeland*, 321 F.3d 582, 603 (6th Cir. 2003) (emphasis in original). Miller is not entitled to a new trial, the only relief he asks for with regard to this claim. This assignment of error is frivolous.

## J. Richard Ramsey's Sentence

Richard Ramsey appeals the reasonableness of his sentence under *United States v. Booker*. He asserts that "the district court only considered the Guideline calculations and made only a cosmetic reference to 18 U.S.C. § 3553(a) in fashioning a sentence and failed to indicate that it was considering any of the other factors listed . . . as required by *Booker*."

The district court found that Ramsey's base offense level was 32 and his Criminal History Category was VI. Ramsey's counsel did not object to the calculation at sentencing. The advisory Sentencing Guideline range was 210 to 262 months. After considerable discussion of Ramsey's extensive criminal history, and after considering the Government's request that the court impose the highest possible sentence, the court sentenced Ramsey to 210 months on Counts 1 and 10, and 120 months on Count 11, to run concurrently. This sentence is at the low end of the Guideline range. The court explained that it had arrived at this sentence after considering the nature and circumstances of the offense, the history and characteristics of the defendant, the advisory nature of the guidelines, and the other factors contained in 18 U.S.C. § 3553(a), and was satisfied that this sentence "will afford adequate deterrence and provide just punishment."

In *United States v. Williams*, we made clear that a sentence within the properly calculated guideline range is credited with "a rebuttable presumption of reasonableness." *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). *Williams* provides that although the sentencing judge must consider the list of sentencing factors articulated in 18 U.S.C. 3553(a), "[s]uch consideration

23

. . . need not be evidenced explicitly . . . ." *Id.* Here, Ramsey "fails to point to any indication that the district court ignored those factors." *Id*. Likewise, as in *Williams*, Ramsey "identifies no factor from § 3553(a) that would render his sentence unreasonable; instead he asks the court to conclude that the district court's failure to explicitly discuss each factor rendered his sentence unreasonable." *Id*.

As we have explained, "a sentence that falls within the advisory Guidelines range is given 'a rebuttable presumption of reasonableness.'" *United States v. Ward*, 447 F.3d 869, 871 (6th Cir. 2006). While we have recognized that "[t]his rebuttable presumption does not relieve the sentencing court of its obligation to explain to the parties and the reviewing court its reasons for imposing a particular sentence," *United States v. Richardson*, 437 F.3d 550, 553-54 (6th Cir. 2006), we have also held that a district court "need not recite these [§ 3553(a) ] factors but must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review." *United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005). The court in this case expressly indicated that it considered the appropriate factors before issuing a sentence that enjoys a rebuttable presumption of reasonableness. Ramsey has provided no insight into his claim that his sentence is unreasonable; nor has he intimated which sentencing factor mitigates against the sentence imposed. We reject this claim of error.

### K. Mary Miller's Sentence

Mary Miller appeals her sentence, arguing that the district court placed undue weight on the advisory Guidelines range by using it as a starting point for sentencing. This claim is without merit.

As we have discussed relative to Richard Ramsey's sentencing claim, the sentencing court must demonstrate its consideration of the § 3553(a) sentencing factors, but it need not recite those

factors or explain its reasoning in applying those factors to the defendant's conduct. Here, Ms. Miller's counsel set out the particular circumstances that she wanted the court to consider, and indicated that those were more fully explained in her sentencing memorandum. The district judge advised Ms. Miller's counsel that he had considered her sentencing memorandum, which he considered to be excellent, and had made it part of the record. The court then stated that it "has considered the nature and circumstances of the offense, the history and characteristics of the defendant and the advisory guideline range, as well as the other factors set forth in Title 18 U.S.C. § 3553(a)."

The Presentence Report calculated a base offense level of 24 and a Criminal History Category II. The Guideline range for these levels is 57 to 71 months, with a statutory consecutive sentence of 60 months for the firearm conviction. The court sentenced Mary Miller to a term of 37 months on the drug-related charges, and 60 months on the firearms charge to run consecutively, for a total sentence of 97 months. The court departed downward from the Guidelines, but indicated its belief "that this sentence will afford adequate deterrence and provide just punishment."

Miller argues that her sentence is unreasonable because the court relied on the Guidelines as a starting point for its consideration. We rejected this argument in *United States v. Cage*, 458 F.3d 537, 543 (6th Cir. 2006), in which we held that "the district court did not err in viewing the Guidelines as a presumptively reasonable starting point and 'considering the Sentencing Guidelines and the Guideline ranges before the court does anything else.'" (Citation omitted). In this case, the record indicates that the district court considered the Guidelines, the sentencing factors, and the interests of justice. We find that the district court adequately considered the Guidelines and the § 3553(a) factors, and imposed a reasonable sentence.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgments of conviction and sentence of each of the defendants.