**NOT RECOMMENDED FOR PUBLICATION**
File Name: 07a0767n.06
Filed: November 1, 2007

**No. 04-5884**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| MYRA D. COMBS, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SILER, COOK, and GRIFFIN, Circuit Judges.

**SILER**, Circuit Judge.   Defendant Myra D. Combs ("Myra") was convicted of: (1) conspiracy to manufacture, distribute, and possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine; (2) possession of methamphetamine with intent to distribute; (3) possession of equipment and materials to manufacture methamphetamine; and (4) possession of a firearm in furtherance of a drug trafficking crime.  Myra only appeals her firearm conviction under 18 U.S.C. § 924(c).  She contends that a jury instruction was erroneous and that there was insufficient evidence to support the conviction.  We AFFIRM.

**BACKGROUND**

In 2002, Myra's husband, Fred Combs, proposed a deal whereby Ryan Malchow would teach him how to manufacture methamphetamine in exchange for living in the basement of the Combs' residence.   Malchow was also to pay "rent" of approximately three and a half grams of

methamphetamine each time he produced a batch of the drug. Malchow moved into the basement with his girlfriend, Crystal Julian, and built a lab for manufacturing methamphetamine. Myra assisted with the manufacturing process by ordering equipment for the lab and purchasing cold tablets, one of the ingredients for methamphetamine. As agreed, Malchow paid the couple a share of each batch, usually delivering it to Myra. At some point, Fred and Myra also began manufacturing and selling methamphetamine in their home.

Eventually, sheriff's deputies came to the home and effected a consensual search. The officers found items consistent with the production of methamphetamine in the Combs' upstairs bedroom. Also in the upstairs portion of the house, they discovered a pistol on the headboard of the Combs' bed, a sawed-off shotgun in a gun safe, an Uzi under a computer table, and several other firearms. Most of the weapons were loaded, and police found numerous other firearms in the basement. Malchow regularly carried a pistol, and Fred occasionally carried a pistol. Myra did not carry a firearm, but Julian testified that the pistol on the headboard belonged to Myra.

## DISCUSSION

### A. Jury Instructions on Unanimity

The district court instructed that Myra could be found guilty under three alternative theories of liability: (1) as a principal, (2) as an aider and abettor, or (3) as a co-conspirator under the *Pinkerton*[1] theory. The jurors were given a general unanimity instruction, requiring them to

---

[1]This refers to the doctrine that originated in *Pinkerton v. United States* whereby a person may be held liable for crimes committed by a co-conspirator if those crimes are within the scope of the conspiracy, committed in furtherance of the conspiracy, and are reasonably foreseeable as a consequence of the conspiracy. 328 U.S. 640, 647-48 (1946).

unanimously agree the defendant committed acts that constituted each element of the offense. The instruction did not require the jurors to unanimously agree upon the theory by which the government proved the elements or upon the specific means by which the defendant satisfied each element. Myra asserts it is possible that the jury rendered its guilty verdict with only a fraction of the jurors finding her guilty under each alternative theory. She argues that such a result does not comport with the Fifth Amendment right to due process or the Sixth Amendment right to trial by jury.

Because the defendant did not raise this objection at trial, we review for plain error. Fed. R. Crim. P. 52(b); *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998). When reviewing jury instructions for plain error, the test is "whether the instructions, when taken as a whole, were so clearly wrong as to produce a grave miscarriage of justice." *United States v. Sanderson*, 966 F.2d 184, 187 (6th Cir. 1992). As a general rule, specific unanimity instructions are not required "unless 1) a count is extremely complex, 2) there is variance between the indictment and the proof at trial, or 3) there is a tangible risk of jury confusion." *Id.* None of these circumstances is present here.

Jurors are not required to agree upon the specific means or act by which a crime was committed. *Schad v. Arizona*, 501 U.S. 624, 631 (1991) (plurality opinion). Moreover, a specific unanimity instruction is not needed simply because the government presents multiple factual scenarios and theories of liability to prove the commission of a single offense. *United States v. Washington*, 127 F.3d 510, 513-14 (6th Cir. 1997) (involving charge of possession of crack cocaine with intent to distribute). In *Washington*, the government offered proof of two separate drug transactions and presented alternative theories as to the defendant's participation in the transactions, including theories of liability as a principal and as an aider and abettor. *Id.* at 513 n.3. As in this

case, the trial court gave only a general unanimity instruction, and we reviewed for plain error. *Id.* at 513. We rejected the defendant's argument that a specific instruction was needed due to jury confusion and ruled that it was not plain error to charge the jury with only a general unanimity instruction. *Id.* at 514.

In this case, Myra does not argue jury confusion; instead, she argues it is fundamentally unfair not to require a specific unanimity instruction where the government presents alternative theories of liability. In support of her argument, she points to this court's finding of plain error in *United States v. Henning*, 286 F.3d 914 (6th Cir. 2002). However, *Henning* is entirely distinguishable because it involved a situation where the district court reversed the defendant's conviction for conspiracy but failed to consider that the jury may have relied on a *Pinkerton* instruction to convict the defendant of other counts. *Id.* at 920.

Failure to give jurors a specific unanimity instruction does not constitute plain error simply because the government advances multiple theories of liability. *See Washington*, 127 F.3d at 513-14. Therefore, the absence of an instruction requiring unanimity as to the theory of conviction does not mandate a reversal of Myra's conviction.

### B. Sufficiency of the Evidence

When a defendant alleges insufficient evidence, we must decide "whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007). As previously stated, the jury was instructed that Myra could be convicted under three alternative theories. To convict Myra as a principal, the government had to prove that

she possessed a firearm and that it was used "in furtherance of" a drug trafficking crime. A conviction under § 924(c) for aiding and abetting can be sustained if the government proved that "the defendant both knew that the principal was armed and acted with the intent to assist or influence the commission of the underlying predicate crime." *Id.* at 712. Under *Pinkerton*, Myra could have been convicted for the crime of a co-conspirator if the criminal act was foreseeable and committed in furtherance of the conspiracy. *See United States v. Wade*, 318 F.3d 698, 701 (6th Cir. 2003).

Possession of a firearm is in furtherance of a drug trafficking crime if it "promotes or facilitates" the crime. *United States v. Miller*, 227 F. App'x 446, 456 (6th Cir. 2007), *cert. denied*, No. 07-5001, 2007 WL 2004447 (U.S. Oct. 1, 2007). To satisfy the "in furtherance" element, the weapon must be "strategically located so that it is quickly and easily available for use." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). Here, the gun found on the headboard of the bed satisfies this requirement, since it was found in the room where Fred and Myra manufactured methamphetamine.

In *Miller*, we addressed a very similar challenge to a conviction for possession of a firearm in furtherance of a drug trafficking offense. We stated, "the ongoing methamphetamine operation and the strategic placement of the guns . . . is sufficient to permit a rational juror to conclude that the guns served a defensive purpose in protecting the lab and its contraband from thieves, competitors, or police." *Miller*, 227 F. App'x at 456. Viewing the evidence in the light most favorable to the government, it is sufficient to support the jury's conclusion beyond a reasonable doubt that Myra possessed a firearm in furtherance of her drug trafficking crime.

AFFIRMED.

No. 04-5884
*U.S. v. Combs*